UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR WAYNE WHITE,** | : | **CIVIL NO. 3:11-CV-2355** |
| **Petitioner,** | : | **(Judge Mariani)** |
| v. | : | |
| **ERIC HOLDER, et al.,** | : | |
| **Respondents.** | : | |

### MEMORANDUM

**I.   Introduction**

Petitioner Arthur Wayne White ("Petitioner" or "White"), a detainee of the United States Immigration and Customs Enforcement ("ICE") Office, who is confined at the Pike County Correctional Facility in Lords Valley, Pennsylvania, initiated the above-captioned action by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) White challenges the constitutionality of his continued detention by ICE under Zadvydas v. Davis, 533 U.S. 678 (2001) pending his removal from the United States to Jamaica, and seeks his immediate release from custody.

For the reasons set forth herein, we conclude that White's Petition was premature at the time of filing and that, even though his detention now has exceeded the presumptively reasonable six-month period of post-final order detention, his detention is constitutional, and therefore, the Petition will be denied.

## II. Factual Background

White is a native and citizen of Jamaica. (Doc. 8-1 at 5, Notice to Appear.[1]) On June 8, 2004, his status was adjusted to that of lawful permanent resident. (Id.)

On December 9, 2009, White was convicted in the Dauphin County Court of Common Pleas for the offense of Possession with Intent to Deliver, to wit: crack cocaine; for the offense of Possession with Intent to Use Drug Paraphernalia, to wit: cellophane baggie; and for the offense of Possession with Intent to Deliver, to wit: crack cocaine. (Doc. 8-1 at 5, Notice to Appear.) These crimes did not arise out of a single scheme of criminal misconduct. (Id.)

On August 18, 2010, ICE commenced removal proceedings against White by issuing a Notice to Appear. (Id. at 3-5.) White was charged that he was subject to removal from the United States pursuant to subsection 237(a)(2)(A)(iii) of the INA for at any time after admission being convicted of an aggravated felony relating to illicit trafficking in a controlled substance, and subsection 237(a)(2)(B)(i) for at any time after admission being convicted of a violation of any law or regulation relating to a controlled substance. (Id. at 5.)

On February 3, 2011, an Immigration Judge ordered White removed to Jamaica. (Id. at 6, IJ Order; at 10-18, Oral Decision of the IJ.) The Immigration Judge also denied White's application for deferral of removal under Article III of the Convention Against Torture. (Id.)

White appealed the Immigration Judge's decision to the Board of Immigration Appeals

---

[1]Citations to page numbers of documents filed on the docket in this action refer to the page numbers generated by the CM/ECF System.

("BIA"), and on June 10, 2011, the BIA dismissed White's appeal. (Doc. 8-1 at 8-9, BIA Decision.)

On July 29, 2011, White was placed into failure to comply status as a result of his failure to cooperate in a telephone interview with the Jamaican Consulate concerning efforts to obtain a travel document for White's removal from the United States to Jamaica. (Doc. 13, Resp't's Sur-Reply Br., at 6, Ex. 1, 1/20/12 ICE letter to White.) On September 23, 2011, White's failure to comply status was lifted after he cooperated in a telephone interview with the consulate. (Id.) White had been in failure to comply status for eighty (80) days. (Id.)

On November 23, 2011, following a review of White's custody status, ICE issued a Decision to Continue Detention explaining that it had been determined that White would not be released from ICE custody pending his removal from the United States. (Id. at 19, 11/23/11 ICE Decision.) The Notice further states as follows:

> You have not taken any measures, as instructed in form I-229, to assist ICE with obtaining a travel document, with the exception of completing a telephonic interview with the Jamaican Consulate. You had previously refused to speak to the consulate which prevented them from initiating the process of issuing a travel document. ICE is currently working with the Jamaican consulate and the issuance of a travel document for your removal to Jamaica is expected in the foreseeable future. You have not submitted any evidence which would show you are not a flight risk or to show that you are not likely to return to engaging in criminal activity.

(Id.) The Notice also notifies White that, if he was not released or removed from the United States by March 1, 2012, jurisdiction of the custody decision in his case would be transferred to the Headquarters Case Management Unit ("HQCMU") in Washington, District of Columbia, which

would make a final determination regarding his custody.[2] (Id.)

## III. Procedural Background

White filed the instant Petition on December 20, 2011. (Doc. 1.) By Order dated January 4, 2012, Respondents were directed to show cause on or before January 25, 2012 why White should not be granted habeas corpus relief. (Doc. 6.) The Order also provided that White may file a reply to the response within fourteen (14) days of its filing, but not later than February 8, 2012. (Id.)

On January 25, 2012, Respondents filed a Response to the Petition (Doc. 8) along with supporting exhibits (Doc. 8-1.) On February 7, 2012, White filed a reply brief. (Doc. 9.)

On February 14, 2012, Respondents filed a Motion seeking leave to file a sur-reply brief based upon new information obtained from ICE legal counsel following White's filing of his reply brief. (Docs. 10, 11.) In their supporting brief, Respondents explained that, in light of White's complaints in his reply brief that he received untimely custody reviews, an inquiry was made to ICE legal counsel concerning White's reviews, and ICE legal counsel provided the information that White had been in failure to comply status for a period of eighty (80) days. (Doc. 11 at 2.) Respondents argued that, because the removal period was suspended during the eighty (80) day period of noncompliance, contrary to their belief at the time of filing the Response, White's detention had not exceeded the presumptively reasonable six month period of detention at the time

---

[2]The HQCMU is on the same administrative level and performs the same custody reviews as the Headquarters Post Order Detention Unit ("HQPDU"). See Tung Thanh Hoang v. Decker, Civil No. 3:CV-08-1748, 2008 WL 4793734, *3 (M.D. Pa. Oct. 31, 2008) (Vanaskie, J.).

of filing the Petition. (Id.) Respondents therefore requested that this Court grant leave to file a sur-reply brief to allow them to submit this argument and evidence and to demonstrate that White has and will continue to receive custody reviews. By Order dated February 15, 2012, Respondents' Motion was granted (Doc. 12), and Respondents then filed the sur-reply brief on the docket (Doc. 13). Accordingly, the Petition is fully briefed and ripe for disposition.

## IV.  Discussion

As an alien under a final order of removal, White's detention is governed by a set of statutory and constitutional rules. First, by statute, aliens like White, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within ninety (90) days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period, the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal recidivist aliens like White, specifically provides that, "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety (90) day "removal period", during which detention is mandatory, begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(i). In addition, it is important to note that suspension of the removal period is permitted when an alien fails to cooperate with the removal process. Specifically, 8 U.S.C. § 1231(a)(1)(C) provides as follows:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).

At the end of the ninety (90) day period, ICE may continue to hold the alien, or it may grant supervised release. 8 U.S.C. §§ 1231(a)(3) & (6). The discretion to detain an alien under § 1231(a) is limited by the Fifth Amendment's Due Process clause. See Zadvydas, 533 U.S. at 693-94. In Zadvydas, the United States Supreme Court interpreted § 1231(a)(6) to include "an implicit limitation" on detention. Id. at 689. The Court determined that "[§ 1231(a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Id. "[F]or the sake of uniform administration in the federal courts" the Court recognized six (6) months as a presumptively reasonable period of detention. Id. at 701. Further, the Court determined that, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. See also Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 Fed. Appx. 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 Fed. Appx. 251, 254 (3d Cir. 2006); Joseph v. United States, 127 Fed. Appx. 79, 81 (3d Cir. 2005).

In instances where an alien is unable to produce evidence demonstrating good cause to

believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts frequently have sustained continuing periods of detention pending removal well beyond the six (6) month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

In the instant case, White's order of removal became administratively final on June 10, 2011, the date on which the BIA dismissed his appeal. Thus, the ninety (90) day presumptive period of detention began to run on that date. 8 U.S.C. § 1231(a)(1)(B)(i). However, White was in failure to comply status for a period of eighty (80) days from July 29, 2011 through September 23, 2011, and therefore, the suspension of the removal period for that time, and extension of the removal period beyond the initial ninety (90) day period, is appropriate. 8 U.S.C. § 1231 (A)(1)(C). Accordingly, if White had cooperated in the first instance in a telephone interview with the Jamaican Consulate, the ninety (90) day presumptive period would have expired on September 8, 2011, and the six-month presumptive period would have expired on December 10, 2011. However, the suspension of the removal period from July 29 through September 23, 2011 resulted in an extension of the ninety (90) day removal period through December 20, 2011, and an extension of the six month presumptive period until February 6, 2012. Thus, on the date of filing of the Petition, December 20, 2011, the ninety (90) day mandatory detention period was just

expiring, and the six (6) month presumptive period had not yet expired, thus rendering White's detention as of that date "presumptively reasonable." See Zadvydas, 533 U.S. 701; Akinwale, supra, 287 F.3d at 1052 ("[t]his six-month period thus must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under Zadvydas.") Accordingly, dismissal of the Petition as premature would be appropriate.

However, in light of the fact that the six (6) month presumptive period expired while this Petition was pending, we have considered whether White has demonstrated that his continued detention is unconstitutional and conclude that he has not. First, White has not met his burden to produce evidence that there is no significant likelihood of removal in the reasonably foreseeable future. In his reply brief, White suggests that the government bears this burden when he argues that the government has failed to submit "substantial evidence" that his removal is reasonably likely in the foreseeable future, and thus, this Court should direct his release from custody. (See Doc. 9 at 4.) To the contrary, White bears the initial burden to show that there is no reasonable likelihood that he will be deported in the reasonably foreseeable future, and only then does the burden shift to the government to show there is a reasonable likelihood of deportation in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701. White's reliance on the mere fact that travel documents have not yet issued as evidence that his removal is not reasonably foreseeable is insufficient to sustain his burden, particularly where his failure to cooperate created a delay in the removal process.

We also find that it is apparent from the record that White received a timely custody review

on November 23, 2011 (see Doc. 8-1 at 19), and there is nothing before the Court to suggest that, following the transfer of jurisdiction of his custody over to HQCMU on March 1, a custody review would not have occurred either sua sponte, or upon written request by White under the provisions of 8 C.F.R. § 241.13(d)(1).[3] Therefore, we find White's detention to be constitutional and will deny the Petition. Nevertheless, our denial will be without prejudice to any right White may have to reassert his claims in the event his detention becomes unreasonably prolonged. An appropriate Order follows.

_____
Robert D. Mariani
United States District Judge

---

[3] 28 C.F.R. § 241.13(d)(1) provides, in relevant part, that, [a]n eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."

9

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARTHUR WAYNE WHITE,** | CIVIL NO. 3:11-CV-2355 |
| **Petitioner,** | (Judge Mariani) |
| v. | |
| **ERIC HOLDER, et al.,** | |
| **Respondents.** | |

## ORDER

AND NOW, TO WIT, THIS 21st DAY OF MARCH, 2012, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** without prejudice.

2. The Clerk of Court shall **CLOSE** this case.

Robert D. Mariani
United States District Judge